Monell, Ch. J. (dissenting).
The action was for the conversion of a quantity of medicine put up in bottles and boxes, and the question on the trial was, the ownership, identity, and conversion of the property. The cOmplaint was dismissed for insufficient evidence on these points.
It was, I think, without contradiction, that in Fébruary, 1871, when the company discontinued business, it was the owner of two thousand five hundred and twenty-four bottles of medicine, put up in boxes. Of the whole number then on hand Kthree thousand. five *411 hundred and twenty-four) they had just previously sold to Zieger one thousand bottles. Zieger succeeded the company in the occupancy of the store, and it was agreed that the whole number (three thousand five hundred and twenty-four bottles) should be put in the cellar, the one thousand bottles sold to Zieger, to be taken out by him, as he should sell them, and the residue (two thousand five hundred and twenty-four bottles) to remain on storage. It was also uncontradicted that after a fire which had occurred there, there was found on the premises two thousand six hundred and thirty-four bottles.
This evidence was sufficient to establish the plaintiffs’ title to all the property found after the fire, except the one thousand bottles sold to Zieger.
I think, also, there was sufficient evidence to go to the jury of the conversion of at least the one thousand six hundred and thirty-four bottles.
When the plaintiffs went to demand the property, the following interview was had according to the testimony given by the president of the plaintiffs’ company :—“ I told the defendant my errand, that I understood that he had a quantity of medicine that had been taken by him, or somebody else, from the premises I have mentioned, 1328 Broadway, and he said “yes,” and I told him in substance that the property belonged to the Medicine Company, and that I was the president, and as president for the company I came there to demand it, and asked him if he would show it to me, and he said he would ; he took me back through the butcher’s shop, up stairs, and in a loft, or a place there, he showed me and my friend who was with me, the boxes it was in ; there was a large quantity of them—a large pile of them; I endeavored, I believe, to count them, but I was unable to do it; I stated to him that the medicine belonged to this company, and he said that he had loaned—[I am stating the substance, I could not tell the *412 words]—he said he had loaned Mr. Zieger some money, and Mr. Zieger had given him a mortgage on it; I told him Mr. Zieger did not own the medicine, and never owned it—had no interest in it at all, not the slightest, and that I must demand it for the company, and that I must bring suit for it if it was not delivered; I asked him if he had taken all the medicine that was there, and he said that he had; he said he had a mortgage on all the whole place, fixtures and everything—I think he said. I have told you the substance of what occurred.”
Another witness testified that he was with the last witness, and that the president, Mr. Culver, asked the defendant, in substance, “if he had any medicine that he had taken from 1328 Broadway—1 think that was the number—and he said he had, and Mr. Culver then asked him if he would allow him to see it, and he said he would, and he took us up in the rear of the butcher’s shop; we went up stairs, in aloft, and there were boxes piled there from eighteen to twenty inches long and a foot in height; he stated that he had taken the property from 1328 Broadway; that he had a mortgage on it, as I understood, and had taken the property there by virtue of that mortgage; Mr. Culver then told him that he was the president of the American Medicine Company, and demanded the return of it to the company, and he refused to give it.”
This evidence, in connection with that which had preceded it, that the plaintiffs were the owners of all the property in the premises 1328 Broadway, except the one thousand bottles sold to Zieger,. was sufficient, I think, to show a conversion.
The defendant admitted that he had taken all the property in the place designated, which, upon the evidence, included some one thousand six hundred and thirty-four bottles of the plaintiffs’ property, and which the defendant refused to deliver.
There was further proof that Zieger had no other *413 property upon the Broadway premises, than the one thousand bottles sold to him by the company, and some store fixtures which are not in controversy in this action, and that a few days after the fire, and after it was found that there were two thousand six hundred and thirty-four bottles remaining, the whole of such remaining property was taken away—and by the defendant.
The defendant did not deny or dispute the taking away of all the property upon the Broadway premises ; and his refusal to deliver was not put upon any ground that placed the taking in issue. He claimed to hold the property under a mortgage from Zieger, and asserted no right or title to it other than such as his mortgage gave him ; and the only defence he can make is, that Zieger was in fact the owner of all the property taken, and had the right to transfer it by way of security for his debt.
As the case stood at the close of the plaintiffs’ evidence, there was, I think, sufficient proof of ownership in the plaintiffs, at least, of a part of the property, and of conversion thereof by the defendant, to put the latter upon his defense.
The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.